IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| HELLEN J. AUSTIN, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Civil Action No. 08-101 Erie |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Plaintiff Hellen J. Austin ("Austin") commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. For the reasons that follow, the decision made by the Commissioner will be vacated and the case will be remanded for further administrative proceedings.

### I. PROCEDURAL HISTORY

Austin protectively filed applications for disability insurance benefits ("DIB") and SSI under Titles II and XVI of the Act on February 20, 2004, alleging disability as of February 1, 2001 (AR 16, 58-59). It quickly became apparent that she did not meet the insured status requirements of 42 U.S.C. § 423(c)(1), since her last date insured was June 30, 1989 (AR 70). Consequently, she was not entitled to DIB. Austin's SSI application was denied by the state agency on July 29, 2004 (AR 36). She filed a timely request for an administrative hearing on August 25, 2004 (AR 41). On December 12, 2006, a hearing was held in Olean, New York, before Administrative Law Judge Robert T. Harvey (the "ALJ") (AR 272-298). Austin, who was represented by counsel, appeared and testified at the hearing (*Id.*). In a decision dated June 6, 2007, the ALJ determined that Austin was not "disabled" within the meaning of the Act (AR 13-24). The Appeals Council denied Austin's request for review on February 8, 2008, thereby rendering the ALJ's decision the final decision of the Commissioner in this case (AR 5). Austin commenced this action against the Commissioner on April 10, 2008, seeking judicial review of the Commissioner's decision. *See* [Doc. No. 1]. Austin and the Commissioner filed motions for

summary judgment on September 12, 2008, and October 14, 2008, respectively. *See* [Doc. Nos. 7 & 9]. These motions are the subject of this Memorandum Opinion.

## II. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d

Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (footnotes omitted).

In an action in which review of an administrative agency's determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

3

### III. Background

Austin was born on February 7, 1967, was thirty-three years of age as of her alleged onset date and forty years of age as of the date of the ALJ's decision (AR 276). At all times relevant to this case, she was a "younger person" within the meaning of 20 C.F.R. § 416.963(c). She is a divorced mother of seven children (*Id.*). Although she apparently did not finish high school, she later earned a General Educational Development ("GED") diploma (AR 24, 276).

From July 1988 through August 1988, Austin worked as a waitress (AR 78). She apparently did not work again until December 1993, when she worked as a housekeeper for approximately one month (*Id.*). She worked in a factory as a machinist from March 1997 through December 1997 (*Id.*). From October 2000 through her alleged onset date of February 1, 2001, Austin worked as a certified nurse's assistant (AR 286).

Austin has a history of discogenic back and neck pain. She evidently sustained spinal injuries in 1989 as a result of a motorcycle accident (AR 277). At the hearing, Austin testified that she had undergone a laminectomy in 1990 (*Id.*). In his opinion, the ALJ observed that no operative report was contained in the record to support this testimony (AR 21). Nevertheless, the documentary record does include treatment notes from Charles Cole Memorial Hospital dated February 9, 1990, indicating that Austin had undergone back surgery one week earlier, and that staples had been removed from her "midline posterior back incision" (AR 212).

Austin became pregnant shortly after her laminectomy. A treatment note dated August 23, 1990, indicated that she was twenty-one weeks pregnant as of that date (*Id.*). She apparently gave birth to a child in early 1991. She had a six-week post-partum gynecological examination on March 22, 1991 (AR 211). Her back problems continued throughout this period of time and on August 4, 1992, a physical examination revealed that she had a limited range of motion in her cervical and lumbar spine (AR 210). She complained of cervical and lumbar pain (*Id.*). This physical examination was apparently related to an attempt by Austin to obtain disability benefits of some kind (*Id.*).

Austin evidently gave birth to another baby during the spring of 1996 and she had another six-week post-partum gynecological examination on June 20, 1996 (AR 206). Two months later, she complained of pain on the left side of her neck (AR 206). Her primary care physician, Dr. James N. Barke, indicated on August 19, 1996, that she was suffering from an acute cervical spine strain (*Id.*).

4

The record contains a treatment note from Dr. Barke dated November 24, 1997, indicating that Austin had seen him for a follow-up appointment in connection with a fracture to her left ankle (AR 202). On that occasion, Austin expressed confidence in her ability to return to work and she was medically cleared to go back to work (*Id.*). At that time, she was working as a machinist (AR 78).

When seen by Dr. Barke on April 9, 1998, Austin requested a referral to a specialist for evaluation of her back pain (AR 202). A subsequent examination revealed abnormalities in her cervical and lumbar spine (*Id.*). A magnetic resonance imaging ("MRI") scan revealed that Austin had "a large central bulge without any nerve impingement" (AR 201). She complained of "chronic low back pain" when she had her annual physical examination on June 16, 1998 (*Id.*). A treatment note from her physical therapist dated August 24, 1998, noted that Austin was experiencing "chronic continuous pain" in her neck and back, and that her medications were "only slightly" helpful in alleviating her symptoms (*Id.*).

Austin was four months pregnant as of July 20, 1999, when she asked Dr. Barke to complete disability forms so that she could obtain medical assistance (AR 200). Dr. Barke noted that Austin was suffering from two herniated discs (*Id.*). Austin apparently attended physical therapy sessions only sporadically, discontinuing such sessions during her pregnancies (AR 177). A record of a fetal ultrasound indicated that she was again pregnant as of January 3, 2001 (AR 148). Her neck and back problems persisted throughout her pregnancies. On October 17, 2002, Austin returned to physical therapy (AR 176). She sought to have medical assistance forms completed (*Id.*). Later that month, an MRI scan revealed that Austin had "a moderate disk protrusion centrally at L5-S1" and "a broad-based disk bulge at L4-L5" (AR 234).

On April 9, 2003, a mammography revealed "a mild nonspecific asymmetry in the superior lateral aspect" of Austin's left breast (AR 142). This mammography was apparently conducted because Austin had been concerned about a painful lump in her left breast (AR 175). Dr. Barke informed her on July 31, 2003, that her breast pain was most likely due to "fluctuation and hormones" rather than to "serious breast pathology" (*Id.*). Later that year, Austin reported that the pain in her left breast had improved (*Id.*).

On February 9, 2004, Austin again complained of pain in her neck and back (AR 174). Although she acknowledged having "good days and back days," she stated that she was never completely without pain (*Id.*). Austin was admitted to Charles Cole Memorial Hospital on June

5

18, 2004, for pain in her back and abdomen (AR 195). She again complained of pain in her left breast (*Id.*). A computed tomography ("CT") scan revealed that there were multiple diverticula in Austin's colon and she was diagnosed with diverticulitis[1] (AR 229). Her pain was resolved by conservative treatment with intravenous fluids and antibiotics and she was discharged on June 23, 2004 (AR 161; 195).

Austin was treated in an emergency room on April 13, 2005, for severe abdominal pain (AR 194). It was determined that this pain was caused by her diverticulitis and her condition improved after she was placed on oral antibiotics (*Id.*).

## IV. DISCUSSION

It is undisputed that Austin has not engaged in substantial gainful activity since her alleged onset date of February 1, 2001 (AR 78). In his decision, the ALJ determined that Austin was suffering from discogenic lumbar spine pain, neck pain, and diverticulosis/diverticulitis (AR 18). Austin's discogenic lumbar spine pain and neck pain were deemed to be "severe" within the meaning of 20 C.F.R. § 416.920(a)(4)(ii), while her diverticulosis/diverticulitis was deemed to be "non-severe" (*Id.*). These impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments") (AR 18, 23). In accordance with 20 C.F.R. § 416.945, the ALJ assessed Austin's residual functional capacity as follows:

> After carefully reviewing all of the evidence of record the Administrative Law Judge finds that the claimant has been exertionally limited in that she has been able to lift and carry up to ten pounds, sit up to six hours per workday and stand or walk up to two hours per workday. She has also been occasionally limited in her ability to push and pull with her upper extremities (hearing testimony; Exhs. 4F, p. 4; 10F, p. 2, 11F, p. 6). The claimant cannot climb ropes, ladders or scaffolds and has been unable to work in areas involving unprotected heights, heavy, moving or dangerous machinery or work in areas where she would be exposed to cold.
>
> The undersigned finds that, after having given the claimant the benefit of every doubt, the claimant has retained the residual functional capacity to perform less than the full range of sedentary exertion work since February 20, 2004.

---

[1] The report of the CT scan indicates that Austin's gallbladder was surgically removed (AR 229). Nonetheless, it is not clear whether her gallbladder was removed while she was hospitalized in 2004, or whether it had already been removed at an earlier time (*Id.*). The context of the reference to Austin's gallbladder surgery leads the Court to believe that her gallbladder had already been removed prior to her 2004 hospitalization.

(AR 21-22). Because Austin's past jobs had required her to perform duties at the light[2] and medium[3] levels of exertion, the ALJ found that she could not return to her past relevant work[4] (AR 22).

If Austin had been capable of performing the full range of sedentary work,[5] Medical-Vocational Rule 201.28 of 20 C.F.R. Pt. 404, Subpt. P, App. 2 would have directed a finding that she was not statutorily disabled (AR 22-23). Relying on Social Security Ruling 85-15, the ALJ concluded that Austin's nonexertional limitations had not significantly eroded the occupational base of jobs consistent with Austin's residual functional capacity (AR 23). Using Rule 201.28 as a framework for decisionmaking, the ALJ concluded that Austin was not "disabled" within the meaning of the Act. (AR 23-24).

Austin makes two basic arguments in support of her motion for summary judgment. First, she contends that the ALJ erred in evaluating the medical evidence contained in the record, thereby rendering his assessment of her residual functional capacity unreliable. *See* [Doc. No. 8] at pp. 10-11. Second, she contends that the ALJ erred in denying her claim on the basis of Social Security Ruling 85-15 without seeking testimony from a vocational expert. *Id.* at 11-13. After a thorough review of the record, the Court finds that Austin is correct with respect to her first argument.

---

[2]The regulation defining the term "light work" provides: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

[3]The regulation defining the term "medium work" provides: "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

[4]"Past relevant work" is defined as work that the claimant has done within the last fifteen years that constitutes "substantial gainful activity," and which has been performed for a sufficiently long period of time to enable the claimant to learn how to perform it. 20 C.F.R. § 416.960(b)(1).

[5]The regulation defining the term "sedentary work" provides: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

7

"Residual functional capacity is defined as that which an individual is still able to do despite the *limitations* caused by his or her *impairments*." *Pearson v. Barnhart*, 380 F. Supp. 2d 496, 505 (D.N.J. 2005) (emphasis added). The critical question with respect to a residual functional capacity assessment is whether the Commissioner has failed to account for a specific functional limitation that is credibly established in the record. *Rutherford v. Barnhart*, 399 F.3d 546, 553-556 (3d Cir. 2005). With that in mind, the Court now turns to the specific assessments made by medical professionals concerning Austin's capacity to engage in work-related activities.

Dr. Barke completed a medical assessment form on October 17, 2002 (AR 151-152). He opined that Austin was temporarily incapacitated because of chronic pain in her neck and back (AR 151). He reported that this incapacitation was expected to last at least until October 17, 2003, at which point Austin would need to be reevaluated (AR 152).

On February 9, 2004, Dr. Barke completed another medical assessment form (AR 149-150). This time, he opined that Austin was permanently incapacitated (AR 150). He cited "neck and back pain" and a "herniated disc" as his reasons for concluding that Austin could not return to work (AR 149). He stated that Austin was unable to stand or sit for extended periods of time (AR 150).

Dr. Abu Aziz performed a consultative medical examination of Austin on May 11, 2004 (AR 153-159). He was left with the impression that Austin was suffering from chronic neck pain, chronic back pain and cervical disc disease (AR 155). Dr. Aziz opined that Austin could frequently lift or carry up to ten pounds and occasionally lift or carry up to one hundred pounds (AR 156). Although he found her to be unlimited in her ability to sit, he indicated that she could stand or walk for no more than one hour during the course of an eight-hour workday (*Id.*). Dr. Aziz further stated that Austin could "never" engage in bending, and that she was limited to only occasional kneeling, stooping, crouching, balancing and climbing (AR 157). Austin's pushing and pulling abilities were deemed to be unlimited (AR 156).

A non-examining state agency physician assessed Austin's capacity to engage in work-related activities on July 20, 2004[6] (AR 181-187). The physician opined that Austin could occasionally lift or carry up to fifty pounds and frequently lift or carry up to twenty-five pounds (AR 182). Austin was deemed to be capable of sitting, standing or walking for up to six hours

---

[6]The Court cannot ascertain the name of this state agency physician.

during the course of an eight-hour workday (*Id.*). The physician indicated that Austin needed to avoid concentrated exposure to vibration and certain work-related hazards (i.e., machinery and heights), and that she was limited to only occasional climbing, balancing, stooping, kneeling, crouching and crawling (AR 183-184).

In response to an inquiry from Austin's counsel, Dr. Barke completed a medical source statement on November 28, 2006 (AR 236-239). He reported that Austin could not even lift ten pounds (AR 237). He indicated that she needed to alternate between sitting and standing every thirty minutes in order to relieve pain, and that she could not sit, stand or walk for more than six hours during the course of an eight-hour workday (AR 237-238). Austin's pushing and pulling abilities were deemed to be limited to an unspecified degree (AR 238). According to Dr. Barke, Austin was totally precluded from climbing, kneeling, crouching and stooping, and she was limited to only occasional balancing and crawling (*Id.*). Dr. Barke opined that if Austin were to be employed, her impairments would require her to be late for work practically every day, and would require her to call off completely at least two days per week (AR 239).

Austin's chiropractor, Dr. Mark Shaffer, completed a medical source statement on December 8, 2006 (AR 240-243). He stated that Austin could lift or carry objects weighing ten pounds on only an occasional basis, and that she could sit, stand or walk for only about four hours during the course of an eight-hour workday (AR 241-242). He indicated that Austin's lower extremities were limited with respect to the activities of pushing and pulling (AR 242). Dr. Shaffer reported that Austin was precluded from climbing, and that she was limited to only occasional balancing, kneeling, crouching, crawling and stooping (*Id.*). He further opined that reaching activities would exacerbate Austin's back condition (*Id.*).

On January 23, 2007, Dr. Kalliopi K. Nestor performed a consultative medical examination of Austin (AR 249-257). On a medical assessment form directing him to state opinions based on his examination, Dr. Nestor indicated that the maximum weight that Austin could lift or carry was ten pounds, and that she could do so on only an occasional basis (AR 254). He determined that she could only sit, stand or walk for up to four hours during the course of an eight-hour workday (AR 255). According to Dr. Nestor, Austin was absolutely precluded from climbing, kneeling, crouching, stooping, balancing and crawling (*Id.*). Her reaching, pushing and pulling abilities were deemed to be limited (AR 256). Dr. Nestor opined that Austin needed to avoid moving machinery, vibration and heights (*Id.*). He also noted that Austin's pain had

9

limited her activities of daily living, such as housework and shopping (AR 257). Dr. Nestor clearly reported on the medical assessment form that his findings concerning Austin's capacity to engage in work-related activities was based on both Austin's health history and his physical examination findings (AR 256).

In his opinion, the ALJ expressly rejected the findings of all treating and examining physicians with respect to Austin's nonexertional limitations on the ground that such findings were based on Austin's subjective complaints and were "inconsistent with the overall objective medical evidence of record and clinical findings" (AR 20). Dr. Shaffer's findings were rejected on the ground that a chiropractor is not an "accepted medical source" for purposes of 20 C.F.R. § 416.963(a) (*Id.*). Dr. Barke's "medical opinions and conclusions" were rejected because the ALJ found them to be unsupported by "the overall objective medical evidence of record and clinical findings" (*Id.*).

The ALJ determined that Austin could lift or carry up to ten pounds, sit for up to six hours during the course of an eight-hour workday, stand or walk for up to two hours during the course of an eight-hour workday, and engage in only occasional pushing and pulling with her upper extremities (AR 21-22). He further determined that she could not climb ropes, ladders or scaffolds, and that she needed to avoid unprotected heights, dangerous machinery and exposure to cold temperatures (AR 22).

All of the physicians who assessed Austin's residual functional capacity however, including the non-examining state agency physician, determined that Austin was limited to only occasional balancing, stooping, kneeling, crouching and crawling (AR 157, 183, 238, 242, 255). Dr. Nestor believed that Austin could never engage in these activities (AR 238, 255). While it is true that a chiropractor is not considered to be an "accepted medical source," a chiropractor's opinion can be considered in conjunction with evidence submitted by physicians. *Hartranft*, 181 F.3d at 361-362. All of the five medical professionals concluded that Austin was limited in her ability to balance, stoop, kneel, crouch or crawl.

It is axiomatic that an administrative law judge "cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). He or she cannot reject the opinions expressed by treating and examining physicians based solely on "his or her own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Moreover, the opinion of a

treating physician can be rejected outright only on the basis of contradictory medical evidence. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). Of course, a medical opinion that is conclusory or otherwise unsupported by the evidence of record need not be credited. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). The Court acknowledges that a statement by a physician indicating that a claimant is "disabled" or "unable to work" is not dispositive of the issue of disability, the determination of which is ultimately reserved to the Commissioner. *Adorno*, 40 F.3d at 47-48. It was certainly the ALJ's prerogative to resolve legitimate conflicts in the evidence, *see Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985), and I recognize that an ALJ may properly accept some parts of the medical evidence and reject other parts. *Adorno*, 40 F.3d at 48. Nevertheless, if the ALJ opts not to credit certain pieces of evidence, it is critical that he acknowledge the evidence and explain his reasoning.

Here, the ALJ's recitation of the reasons for his rejection of the findings of all four treating and examining physicians with respect to Austin's nonexertional limitations is patently inadequate. As noted by the court in *Wilson v. Astrue*, 2007 WL 4225507 (E.D.Pa. 2007):

> The ALJ's conclusion that Dr. McCoy's opinion "is not supported by clinical and objective medical findings and is inconsistent with other substantial evidence in the record" is nothing more than a conclusory statement. No explanations or specific examples are provided from the record indicating what medical evidence the ALJ found to contradict Dr. McCoy's opinion. Such a perfunctory statement regarding the treating physician's opinion is inadequate to satisfy the standard.

*Wilson v. Astrue*, 2007 WL 4225507 at *6. As in *Wilson*, the ALJ's rejection of the medical evidence was completely conclusory. *See Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 121-22 (3rd Cir. 2000) (ALJ must review all pertinent medical evidence and explain the basis for his acceptance or rejection of same). Given the ALJ's failure to adequately explain his rejection of pertinent medical evidence, the case shall be remanded to the Commissioner for further consideration consistent with this Memorandum Opinion.[7]

## V. CONCLUSION

An appropriate Order follows.

---

[7] Given the Court's remand it is unnecessary to reach this issue at to whether the ALJ erred in failing to utilize the services of a vocational expert.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELLEN J. AUSTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-101 Erie |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

AND NOW, this 29th day of May, 2009, and for the reasons set forth in the accompanying Memorandum Opinion, IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment [Doc. No. 9] is DENIED, and the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED insofar as it seeks an award of benefits. The decision of the Commissioner of Social Security is hereby VACATED and the case is REMANDED to him for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is hereby directed to mark the case closed.


                                    s/ Sean J. McLaughlin
                                    United States District Judge


cm: All parties of record.